[Cite as *In re J.C.*, 2023-Ohio-4400.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: J.C.

C.A. No.     30759

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 21-12-1015

DECISION AND JOURNAL ENTRY

Dated: December 6, 2023

HENSAL, Presiding Judge.

{¶1}     Appellant, R.C. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights and placed his minor child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2}     Father is the biological father of J.C., born December 21, 2021. The child's mother ("Mother") did not appeal from the trial court's judgment.

{¶3}     Shortly after J.C.'s birth, CSB filed a complaint, alleging that J.C. was abused, neglected, and dependent for numerous reasons, including Mother's prenatal drug use and resulting medical problems with this child; the family's lack of stable housing; and an ongoing abuse, neglect, and dependency case with Mother's older child, who is not Father's child, which was based on Mother's drug problems and Father's sexual abuse of that child.

{¶4} CSB later amended the complaint in this case to add that J.C. was still experiencing symptoms of drug withdrawal and Father had been criminally charged with sexual offenses against J.C.'s older sibling. Both parents waived their rights to adjudicatory and dispositional hearings and agreed that J.C. would be adjudicated a dependent child, placed in the temporary custody of CSB, and that the trial court would adopt CSB's original case plan as an order of the court. The dependency adjudication was explicitly based on allegations in the amended complaint, which included Mother's history of drug abuse and refusal to cooperate with CSB, the child's lack of stable housing, and Father's substantiated sexual abuse of J.C.'s sibling.

{¶5} Because Father was only alleged to be J.C.'s father at that time, the original case plan required him to establish paternity, which he did approximately one month later. After Father established his paternity, he was informed at a review hearing that CSB would be amending the case plan to include specific reunification goals for him, including a mental health and basic needs component. Father had reported past mental health symptoms and multiple mental health diagnoses, including schizophrenia and bipolar disorder, and that he had already been taking psychiatric medication. The CSB caseworker made a referral for Father to a mental health provider.

{¶6} Approximately two weeks later, CSB filed the amended case plan. The trial court adopted it ten days later, because no one filed a timely objection or request for a hearing. *See* R.C. 2151.412(F)(2)(b). The amended case plan required that Father engage in consistent mental health treatment and demonstrate that he was emotionally stable and able to provide protective capabilities in his role as a parent. The basic needs component of the case plan required, among other things, that Father demonstrate that he had clean, safe, and stable housing with functioning utilities and that he could otherwise meet the basic daily needs of J.C. on a consistent basis.

{¶7} During July 2022, the sibling's juvenile case concluded with that child being placed in the permanent custody of CSB. On August 31, 2022, Father entered a guilty plea and was convicted of two counts of unlawful sexual conduct with a minor under Section 2907.04 of the Revised Code. Approximately three months later, CSB moved for permanent custody of J.C. CSB raised numerous grounds for permanent custody against Mother, including that J.C. could not or should not be returned to her custody because her parental rights with respect to a sibling of J.C. had been involuntarily terminated and she had failed to prove that, notwithstanding the prior termination, she was able to provide J.C. with a suitable home. R.C. 2151.414(B)(1)(a); R.C. 2151.414(E)(11).

{¶8} Pertaining to Father, CSB alleged that permanent custody was in the best interest of J.C. and that the child could not or should not be placed in Father's custody because he had failed to substantially remedy the conditions that caused the child's continued placement outside his custody and that he had chronic mental health conditions that prevented him from providing J.C. with a stable home. R.C. 2151.414(B)(1)(a); R.C. 2151.414(E)(1) and (2). Father alternatively moved for legal custody to the paternal grandmother ("Grandmother").

{¶9} Less than one week after CSB moved for permanent custody, Father was sentenced to 21 months' incarceration on his sex offense convictions, but it is unclear from the record when he began serving his sentence. By the time the case went to the final dispositional hearing, Father was serving his sentence and would remain incarcerated for more than another year. Father did not appear at the final hearing, but he was represented by counsel. Father's only argument at the hearing was that J.C. should have been placed in the legal custody of Grandmother rather than in the permanent custody of CSB.

**{¶10}** Following the hearing, the trial court terminated parental rights and placed J.C. in the permanent custody of CSB. Father appeals and raises one assignment of error.

II.

### ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED REVERSIBLE [ERROR] WHEN IT TERMINATED FATHER'S PARENTAL RIGHTS AS THE DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶11}** Father's sole assignment of error is that the trial court's permanent custody decision was not supported by the evidence. Notably, he does not challenge the trial court's decision to deny his motion for J.C. to be placed in Grandmother's legal custody. Therefore, this Court will not address that aspect of the trial court's judgment but will review only whether the trial court properly found that CSB had established grounds for permanent custody.

**{¶12}** Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under Section 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under Section 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶13} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶14} The trial court found that the first prong of the permanent custody test was satisfied because J.C. could not be returned to Father's custody under Section 2151.414(B)(1)(a) because Father had failed to substantially remedy the conditions that caused the removal of J.S. from the home. R.C. 2151.414(E)(1). Father asserts that he did not have a sufficient opportunity to remedy the conditions that caused J.C. to be placed outside the home because: he was not given adequate notice of what conditions he needed to resolve; the original and amended case plans were not properly prepared or amended; CSB did not provide him with reasonable reunification efforts; and he did not have sufficient time or opportunity to comply with the reunification goals of the case plan.

{¶15} Father did not raise any argument about a lack of reasonable reunification efforts at the permanent custody hearing and has failed to demonstrate that CSB was required to prove that it made reasonable efforts at that stage of the proceedings. Section 2151.419(A) specifically required CSB to establish reasonable efforts toward reunification or to prevent the continued removal of J.C. from the home:

> at any hearing held pursuant to section 2151.28 [shelter care], division (E) of section 2151.31 [ex parte emergency temporary custody], or section 2151.314 [shelter care placement], 2151.33 [pre-adjudication temporary placement], or 2151.353 [disposition following adjudication] of the Revised Code at which the

court removes a child from the child's home or continues the removal of a child from the child's home[.]

R.C. 2151.419(A)(1). *See also In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 43. Father does not argue that the trial court failed to make the requisite findings at those prior hearings or that the findings were not proper.

{¶16} Regarding Father's arguments about deficiencies in the case plans, Father did not raise these issues at the permanent custody hearing or at any other point during the trial court proceedings. Father was represented by counsel throughout these proceedings. If he believed that the case plans were not sufficient, his trial counsel could have objected to the original or first amended case plan, or filed proposed case plan amendments, but he did not. *See* R.C. 2151.412(F)(2).

{¶17} On the merits of the trial court's finding that Father failed to remedy the conditions that caused the child to be placed outside the home, Father argues that the only requirement for him on the case plan was to engage in mental health services and that he had no opportunity to do so. The evidence before the trial court demonstrated that Father had been referred to mental health services before he was incarcerated, but he did not engage in those services.

{¶18} Moreover, the first amended case plan also required Father to demonstrate that he had stable housing and could otherwise provide for J.C.'s basic needs in an appropriate environment. By the time of the hearing, Father was incarcerated and would remain incarcerated for more than another year. Father implicitly argues that the mere fact of his incarceration did not establish that he lacked the ability or desire to provide his child with appropriate care. His argument is unpersuasive, as it relies on case law that analyzed entirely different facts and/or subsections of Section 2151.414(E).

{¶19} The first amended case plan explicitly required Father to demonstrate that he could provide J.C. with "clean and safe housing" because he had moved out of Grandmother's home. A child's "home" is generally understood to mean where the child's family resides. *In re M.G.*, 9th Dist. Summit No. 29596, 2020-Ohio-3872, ¶ 11. The evidence was not disputed that Father was unable to meet J.C.'s basic needs for a home at the time of the hearing or in the foreseeable future. Father was incarcerated and would be for at least another year. An adult penal institution obviously was not an appropriate home in which a young child could reside. Given that a lack of stable housing was one of the reasons that J.C. was removed from her parents' custody, Father has failed to demonstrate any error in the trial court's finding that he had failed to substantially remedy the conditions that had caused the ongoing placement of J.C. outside her parents' custody. R.C. 2151.414(E)(1).

{¶20} Next, the trial court was required to determine that permanent custody was in the best interest of the child. Although Father has not challenged this aspect of the permanent custody judgment, in the interest of justice, this Court will review the best interest finding. This Court's best interest review focuses primarily on the best interest factors set forth in Section 2151.414(D). *In re M.S.*, 9th Dist. Summit Nos. 30506 and 30515, 2023-Ohio-1558, ¶ 25. In making its best interest determination, the trial court was required to consider the statutory best interest factors, which include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in Section

2151.414(E)(7)-(11) apply.[1]  R.C. 2151.414(D)(1)(a)-(e); *see also In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

{¶21} Father apparently had no interaction with J.C. during the first five or  six months of the child's life.  After Father established his paternity, he attended 18 of 20 scheduled weekly, one-hour supervised visits with J.C. prior to his incarceration.  While incarcerated, he did not visit the young child and would be unavailable to see J.C. for at least another year.

{¶22} J.C. was too young to express her wishes, so the guardian ad litem spoke on the child's behalf.  She opined that permanent custody was in the child's best interest because she was doing well in the foster home where she had lived her entire life.  The guardian ad litem gave no specific testimony about Father.  When Father's counsel cross-examined her, he questioned only whether it was in the child's best interest to be placed in the legal custody of Grandmother.

{¶23} J.C. had spent her entire short life outside her parents' custody and in a temporary placement.  Neither parent was able to provide her with a suitable home at that time or in the foreseeable future.  CSB also had been unable to find an appropriate relative to take legal custody of the child.  Although Grandmother had expressed an interest in legal custody, she had failed to establish a bond with J.C.  More significantly, there was substantial evidence before the court to support its conclusion that Grandmother did not appreciate the significance of Father's crimes against J.C.'s older sibling, as Grandmother had blamed the incidents on Mother and/or the child seducing Father.  For that reason, the trial court expressed concern that Grandmother may not be willing or able to adequately protect J.C. from similar abuse by Father.

---

[1] CSB did not specifically allege, and the trial court did not find, that any of those provisions applied to the facts of this case.

**{¶24}** The evidence before the trial court supported its conclusion that a legally secure permanent placement would be achieved by placing J.C. in the permanent custody of CSB. Father has failed to demonstrate that the trial court lost its way by terminating his parental rights and placing J.C. in the permanent custody of CSB. *See Eastley,* 2012-Ohio-2179, at ¶ 20. Father's assignment of error is overruled.

## III.

**{¶25}** Father's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
STEVENSON, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

BRIAN ASHTON, Attorney at law, for Appellee.

CAROLYN COLEMAN, Guardian ad Litem.