[Cite as *In re M.S.*, 2023-Ohio-1558.]

STATE OF OHIO      )
                  )ss:
COUNTY OF SUMMIT   )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

IN RE: M.S.

C.A. No.     30506
              30515

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 21 10 0855

DECISION AND JOURNAL ENTRY

Dated: May 10, 2023

STEVENSON, Judge.

{¶1} Appellants, D.L. ("Mother") and S.S. ("Father"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed their minor child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother and Father are the biological parents of M.S., born June 26, 2021. Father established paternity approximately two months after M.S. was born. The parents' other children are not parties to this case.

{¶3} Apparently because of confusion about where Mother resided at that time, this juvenile case was originally filed in Portage County. The juvenile court adjudicated M.S. as a dependent child and placed her in the temporary custody of Portage County Department of Job and Family Services (PCDJFS). After approximately four months, Portage County transferred the

case to Summit County, where the child was born and both parents reside, and the Summit County court placed M.S. in the temporary custody of CSB.

{¶4} PCDJFS removed M.S. from her parents' custody shortly after birth primarily because of Mother's long-term drug use. Mother had tested positive for numerous illegal drugs throughout her pregnancy and tested positive for fentanyl and benzodiazepines when she gave birth to M.S. M.S. was later admitted to a hospital neonatal intensive care unit, where she was treated for symptoms of drug withdrawal for more than one week. Doctors diagnosed M.S. with neonatal abstinence syndrome ("NAS"), which resulted from Mother's drug use during pregnancy and caused developmental delays in the child's fine and gross motor skills. M.S. will require ongoing treatment and monitoring for several years, as the full extent of how NAS will affect her development cannot be determined until she is older.

{¶5} From the time M.S. was removed from Mother's custody, she was placed in the home of foster parents who were friends of a maternal aunt. The foster parents met all the child's basic needs and ensured that M.S. participated in Help Me Grow to address her developmental delays.

{¶6} PCDJFS first filed a case plan, adopted in Portage County, and CSB later filed a case plan in the Summit County case, which was adopted by the trial court in Summit County. As required by the Portage County case plan, Father established paternity before the case transferred to Summit County. The Summit County case plan goals for both parents focused primarily on their history of substance abuse and domestic violence in their relationship. Their history of domestic violence included an incident of physical violence against Mother while she was pregnant with M.S., for which Father was convicted of felony domestic violence and placed on community

control. The parents were also required to demonstrate that they could meet the basic and special needs of M.S.

{¶7} During the next several months, however, the parents failed to comply with the reunification goals of the case plan. Mother engaged in medically assisted drug treatment, and in some drug counseling, but every treatment program discharged her for lack of compliance. Mother submitted to drug testing while in treatment, but she continued to test positive for illegal drugs. Father failed to demonstrate that he engaged in any reunification services. He likewise failed to comply with the conditions of his community control following his conviction of domestic violence against Mother. Both Mother and Father refused to allow the caseworker to take oral swabs for drug screening.

{¶8} After Father established his paternity in September 2021, the paternal grandmother ("Grandmother") had two visits with M.S. in Portage County. When this case transferred to Summit County, however, Grandmother told the CSB caseworker that she was not interested in placement of M.S., nor did she want to visit the child. Several months later, Grandmother asked CSB to consider her for placement of the child. Her home was evaluated and approved by CSB, and the parents and Grandmother began visiting M.S. at Grandmother's home.

{¶9} On June 3, 2022, CSB moved for permanent custody of M.S. M.S. had not been in agency temporary custody in Portage and Summit Counties for more than 12 months at that time, so CSB's first-prong allegations focused on whether M.S. could not or should not be returned to the parents' custody based on one of several alternative grounds set forth in RC. 2151.414(E). *See* R.C. 2151.414(B)(1)(a). Although the parents had moved for a few alternative dispositions of the child, by the end of the hearing, each withdrew their motions for legal custody. They conceded that they were not prepared to provide M.S. with a stable permanent home, but they stood by their

previously filed motions to place M.S. in the legal custody of Grandmother. Following a two-day hearing held on September 19 and October 31, 2022, the trial court terminated parental rights and placed M.S. in the permanent custody of CSB.

{¶10} Mother and Father separately appealed and this Court consolidated their appeals. Mother raises three assignments of error and Father raises two. This Court has consolidated two of their assigned errors to facilitate review.

II.

## MOTHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO JOURNALIZE THE CASE PLAN WITH THE VISITATION CHANGE APPROVED BY THE COURT ON OCTOBER 19, 2022 AND ALLOWED TESTIMONY AT TRIAL AS IF IT WERE JOURNALIZED.

{¶11} Mother's first assignment of error is that the trial court erred by allowing testimony about a visitation change that was ordered by the court between the first day of the hearing on September 21, 2022, and the second day of the hearing on October 31, 2022. Mother points to evidence about a visitation change that the trial court ordered on October 19, 2022, after the trial court received reports from CSB that there had been a verbal altercation between the parents and Grandmother during a visit at Grandmother's home. The trial court ordered that visits would be returned to CSB's family interaction center ("FIC"), and that the parents would visit separately with M.S. Mother argues on appeal that this evidence was inadmissible because CSB did not make a proper amendment to the case plan. Mother has failed to demonstrate that the trial court erred in admitting testimony about the visitation change on the second day of the hearing.

{¶12} To begin with, Mother mischaracterizes this visitation change as a substantive change to the case plan that required CSB to amend the case plan. Mother's right to visitation, as set forth in the case plan, did not change. After this case was transferred to Summit County, CSB

filed only one case plan in this case, which was adopted by the trial court as an order of the court. The case plan broadly stated Mother's right to visitation with M.S. as: "1 time[] Weekly/2 Hourly" located at an "Agency Setting" and that, "[d]ue to parental substance use, the visits will be supervised." The case plan did not provide Mother with any right to visit M.S. at Grandmother's home or anywhere else outside of an agency setting.

{¶13} On appeal, the evidence about the specific locations of Mother's visits comes from testimony admitted at the hearing. For unspecified periods of time, Mother had some visits with M.S. outside the FIC at the home of the foster parents, Grandmother, and the custodian of her other children, until transportation to and/or supervision at each of those locations became a problem. The case plan was not amended to reflect any of those changes, nor does this Court's review of the official record reveal any court orders to reflect those changes. The changes to the visitation locations were apparently made through informal agreements or circumstances that are not otherwise reflected in the official appellate record.

{¶14} On October 11, 2022, CSB received reports that there had been a verbal altercation between Mother, Father, and Grandmother during one of the visits at Grandmother's home, which had caused Grandmother to terminate the visit. CSB later requested, and was granted, a court order to move Mother's visits with M.S. back to the FIC. As this order did not constitute any change to the journalized terms of the case plan, there was no need for a case plan amendment.

{¶15} Aside from testimony about the October 2022 visitation location change, the journal entry moving the visitation back to the FIC was already part of the trial court record in this case. Moreover, CSB did not ask any questions about the alleged altercation and visitation change until after Mother and Father had already done so. Neither parent raised any objection to CSB's questioning on this topic and, even if they had, Mother and Father may not take advantage of an

alleged error that they themselves invited. *Lopez v. Thomas*, 9th Dist. Summit No. 27115, 2014-Ohio-2513, ¶ 24. Mother's first assignment of error is overruled.

**MOTHER'S ASSIGNMENT OF ERROR II**

THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO APPLY AND ENFORCE R.C. 2151.281(D) AND (I) AND BY ADMITTING THE TESTIMONY OF THE GAL SINCE SHE WAS NOT IN A POSITION TO ASSIST THE COURT IN MAKING A BEST INTEREST DETERMINATION.

{¶16} Through her second assignment of error, Mother argues that the trial court should not have admitted the testimony of the guardian ad litem because she failed to comply with some of the specific requirements of Sup.R. 48.03(D) for performing her duties as the guardian ad litem in this case. Mother raises these arguments for the first time on appeal. In the trial court, Mother did not argue that the guardian ad litem had failed to "faithfully discharge [her] duties" in this case, nor did she seek removal and replacement of the guardian ad litem, which is the remedy provided by statute. R.C. 2151.281(D). In fact, Mother failed to raise any objection at the permanent custody hearing to the admissibility of the report or testimony of the guardian ad litem.

{¶17} By failing to timely raise this argument in the trial court, Mother has forfeited all but plain error on appeal. *See In re T.B.*, 9th Dist. Summit No. 27334, 2014-Ohio-4040, ¶ 12. Although she uses the term "plain error" as the standard of review for this assignment of error, Mother fails to articulate a plain error argument by arguing or demonstrating that the guardian ad litem would have made a different recommendation if she had conducted a more thorough investigation in this case. *See In re G.B.*, 9th Dist. Lorain Nos. 19CA011599 and 19CA011600, 2020-Ohio-3220, ¶ 42.

{¶18} Mother likewise failed to raise any of these alleged shortcomings when she cross-examined the guardian ad litem. Father's cross-examination of the guardian ad litem briefly emphasized that she had visited Grandmother's home only twice, but that "attempt[] to discredit

the reliability of the guardian's report and recommendation through cross-examination went to the weight to be assigned to her opinion, not its admissibility." *In re M.P.*, 9th Dist. Medina No. 14CA0110-M, 2015-Ohio-2088, ¶ 26. Mother has failed to demonstrate that the trial court committed plain error in admitting or considering the testimony of the guardian ad litem at the permanent custody hearing. Her second assignment of error is overruled.

### FATHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PLAIN AND REVERSIBLE ERROR WHEN IT GRANTED PERMANENT CUSTODY TO [CSB] AND DENIED FATHER'S MOTION FOR LEGAL CUSTODY TO [] GRANDMOTHER AS THE TRIAL COURT'S DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

### MOTHER'S ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED PLAIN ERROR AND ABUSED ITS DISCRETION WHEN IT FOUND IT WAS IN THE BEST INTEREST OF [M.B.] TO GRANT PERMANENT CUSTODY TO CSB RATHER THAN GRANT LEGAL CUSTODY TO GRANDMOTHER BECAUSE THAT DECISION WAS NOT IN THE BEST INTEREST OF [M.B.], [WAS] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

{¶19} Father's first and Mother's third assignments of error are that the trial court's permanent custody decision is against the manifest weight of the evidence. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C.

2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶20} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶21} The trial court found that the first prong of the permanent custody test was satisfied in this case under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(E)(1). Those provisions together provide that the child "cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents[]" if the trial court finds, by clear and convincing evidence, that "[f]ollowing the placement of the child outside the child's home * * *, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." Notably, neither parent challenges that finding, which was fully supported by the evidence.

{¶22} Most of the evidence admitted at the permanent custody hearing involved testimony and exhibits about the parents' failure to work toward reunification with M.S. Neither parent cooperated with CSB to work on case plan services. Mother engaged in some inconsistent drug

treatment, but she refused to enter residential drug treatment, which had been recommended to address her long-term substance abuse problem. Mother continued to test positive for illegal drugs during this case, yet she insisted that all the positive test results were false positives. During the second day of the hearing, however, Mother admitted that she had used both fentanyl and methamphetamine as recently as a few days earlier.

{¶23} Father refused to engage in any case plan services. He also refused to submit drug swabs when asked by the caseworker and he had failed to comply with the conditions of his community control on his conviction of domestic violence. The parents had remained in a relationship throughout this case and the police had been called to intervene in numerous additional domestic violence altercations between them.

{¶24} The parents challenge the trial court's finding that permanent custody was in the best interest of M.S. but fail to recognize how their admission that they had failed to remedy their parenting problems or develop a close relationship with their child also affected the court's determination of the best interest of the child. As part of her best interest argument, Mother asserts that she complied with some of the reunification goals of the case plan. "This Court has repeatedly held that, although case plan compliance may be relevant to the best interest of the child, it is not dispositive." *In re K.C.*, 9th Dist. Summit No. 30234 and 30237, 2022-Ohio-2851, ¶ 17, citing *In re J.W.*, 9th Dist. Summit No. 28976, 2019-Ohio-210, ¶ 15. Furthermore, given the parents' failure to challenge the trial court's finding under R.C. 2151.414(E)(1) that they failed to substantially remedy the conditions that caused M.S. to remain placed outside their home, they have acquiesced in "the trial court's implicit finding that they failed to make significant progress on the reunification goals of the case plan." *In re A.S.*, 9th Dist. Summit Nos. 29291 and 29308, 2019-Ohio-2414, ¶ 12.

{¶25} This Court's best interest review focuses on the best interest factors set forth in R.C. 2151.414(D). In making its best interest determination, the trial court was required to consider the statutory best interest factors, which include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply.[1] R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

{¶26} Rather than placing M.S. in the permanent custody of CSB, the parents assert that the trial court should have placed the child in the legal custody of Grandmother. At the hearing and again on appeal, the parents assert that placement with Grandmother was best for the child because it would have preserved the family relationships. The juvenile court's disposition of legal custody "is a less drastic disposition than permanent custody" because the parents retain their "residual parental rights, privileges, and responsibilities." *In re A.L.*, 9th Dist. Summit No. 28400, 2017-Ohio-7689, ¶ 18; R.C. 2151.011(B)(21). This Court has held, however, that if permanent custody is in the best interest of the child, legal custody to a relative necessarily is not. *In re D.T.*, 9th Dist. Summit No. 29876, 2021-Ohio-1650, ¶ 15.

{¶27} The first best interest factor is the interaction and interrelationship of the child with her parents, relatives, caregivers, and significant other people in her life. R.C. 2151.414(D)(1)(a). This significant best interest factor "focuses on a critical component of the permanent custody test: whether there is a family relationship that should be preserved." *In re C.M.*, 9th Dist. Summit No. 21372, 2003-Ohio-5040, ¶ 11. The parents primarily assert that Grandmother should have received custody because she is a biological relative. They make no argument, however, about

---

[1] The trial court did not find that any of those provisions applied to the facts of this case.

why their parental rights and/or this family relationship should be preserved. They do not dispute that they failed to work on the case plan to demonstrate that they wanted to preserve their family. They did not consistently visit M.S. to develop a close relationship with her and both continued to deny that M.S. had been affected by Mother's prenatal drug use or that she had any developmental delays.

{¶28} "Any custodial determination about the best interest of a child inherently requires the trial court to consider whether a proposed custodian can provide the child with appropriate care." *See In re S.M.*, 9th Dist. Summit No. 30084, 2022-Ohio-1083, ¶ 21. Whether it is in the best interest of the child for the parents to retain residual parental rights involves similar considerations, as R.C. 2151.414(D)(1)(a) explicitly requires the court to examine the child's interaction and interrelationships with "the child's parents, siblings, relatives, [and] foster caregivers[.]" If the parents have made minimal effort to improve their parenting abilities and/or establish a relationship with their newborn child, the trial court should consider that evidence in determining whether there is a family relationship that should be preserved. *See In re C.M.*, 2003-Ohio-5040, at ¶ 11.

{¶29} The evidence also demonstrated that Grandmother had not developed a strong familial bond with M.S. Grandmother explained she was reluctant to establish a relationship with M.S. before Father confirmed that they were biologically related, however, the focus here is solely on the best interest of M.S. Grandmother did not meet M.S. until after Father established paternity when the child was more than two months old. Over the next two months, Grandmother had only two visits with M.S. while the child was in the custody of PCDJFS. Grandmother had expressed an interest in providing a placement for the child, but PCDJFS did not approve her home because Father was living there.

{¶30} After the case was transferred to Summit County, Grandmother initially told the caseworker that she did not want custody of M.S. or visitation with her. Several months later, Grandmother expressed interest in developing a relationship with the infant child. It took more than two months for Grandmother's home to be assessed and approved, in part because she cancelled the scheduled assessment three times.

{¶31} By the time the permanent custody hearing commenced in September 2022, M.S. was nearly 15 months old. Grandmother had visited with the child a total of 14 or 15 times throughout her lifetime, for only a few hours at a time. Grandmother had never cared for M.S. overnight or for an extended period, was not familiar with her special developmental needs, and was not prepared to meet the child's day-to-day needs. According to the CSB caseworker, Grandmother was still "working to establish a consistent relationship[]" with M.S. Grandmother had facilitated a few visits between M.S. and some of her siblings during this case, but she no longer did so because she had a contentious relationship with the custodian of those siblings.

{¶32} CSB and the guardian ad litem also expressed concern that Father, who had not addressed his substance abuse or domestic violence problems, had been living with Grandmother. Grandmother and Father claimed that Father was no longer living in her home, but CSB believed that Father would eventually move back there. Grandmother admitted that she had allowed Father to move in with her many times in the past because he lacked the ability to support himself. Father listed Grandmother's address as his permanent address and testified that he would be moving soon but he had not yet found a place to live. The caseworker further expressed doubt that Grandmother would be able to protect M.S. from Father, even if he did not live there. Grandmother made excuses for Father and tended to minimize the risk that he posed to M.S. because of his long-term

history of untreated substance abuse and ongoing domestic violence in his relationship with Mother.

{¶33} On the other hand, M.S. had been living in the same foster home since she was released from the hospital after her birth. M.S. was closely bonded to everyone in the foster family and that family consistently met all her basic and special needs. The foster mother was actively engaged in the child's sessions with Help Me Grow and both foster parents had been "working diligently" to address her developmental delays outside the sessions. The caseworker testified that the foster parents "have been dedicated since the very beginning" to meeting the needs of M.S. The foster parents were interested in adopting M.S.

{¶34} Because M.S. was only one year old at the time of the hearing, the guardian ad litem spoke on her behalf. She opined that permanent custody was in the best interest of M.S. She emphasized that the parents had done very little to remedy their parenting problems. She believed that Grandmother had an appropriate home and interacted well with M.S., but she questioned whether Grandmother understood the child's developmental needs. More significantly, the guardian ad litem was concerned about Grandmother's ability to protect M.S. from Father and Mother if they were to retain visitation rights.

{¶35} The custodial history of M.S. has been spent living in a temporary placement with the same foster family. She had been thriving in that home, where the foster parents had been working closely with her to address and resolve many of her developmental delays.

{¶36} M.S. needed a legally secure permanent placement and both parents conceded that they were not able to provide their child with a legally secure permanent placement. Although the parents argue that the trial court should have instead placed M.S. in the legal custody of Grandmother, as explained above, that placement was not in the best interest of the child. The

foster parents had been providing M.S. with a stable placement and were prepared to adopt M.S., so the trial court reasonably concluded that a legally secure permanent placement would be achieved by placing MS. in the permanent custody of CSB.

{¶37}  After reviewing the evidence before the trial court, this Court cannot conclude that it lost its way in finding that permanent custody was in the best interest of M.S.  *See Eastley* at ¶ 20.  Father's first and Mother's third assignments of error are overruled.

## FATHER'S ASSIGNMENT OF ERROR II

> THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PLAIN AND REVERSIBLE ERROR WHEN IT GRANTED PERMANENT CUSTODY TO [CSB] WITH A FINDING THAT THERE WAS CLEAR AND CONVINCING EVIDENCE THAT [CSB] PROVIDED REASONABLE REUNIFICATION EFFORTS PURSUANT TO R.C. 2151.419.

{¶38}  Father's second assignment of error is that the trial court erred in finding that CSB had made reasonable reunification efforts in its permanent custody decision.  Despite Father's arguments to the contrary, PCDJFS and CSB did include Father on the case plans and CSB did consider Grandmother as a potential placement for the child, after she expressed interest.  Moreover, Father has failed to cite any legal authority to support his underlying argument that the trial court was required to find that CSB had made reasonable reunification efforts at this late stage of the proceedings.

{¶39}  "'It is an appellant's duty to demonstrate his assigned error through an argument that is supported by citations to legal authority * * *.'"  *Pavlescak v. Ohio Concrete Resurfacing, Inc.*, 9th Dist. Lorain No. 21CA011817, 2023-Ohio-2, ¶ 20, quoting *Falah v. Falah*, 9th Dist. Medina No. 20CA0039-M, 2021-Ohio-4348, ¶ 15.  Father relies solely on R.C. 2151.419, which sets forth the requirement for the trial court to make reasonable efforts findings in dependency,

neglect, and abuse cases. R.C. 2151.419(A) specifically required PCDJFS and CSB to establish reasonable efforts toward reunification or to prevent the continued removal of M.S. from the home:

> at any hearing held pursuant to section 2151.28 [shelter care], division (E) of section 2151.31 [ex parte emergency temporary custody], or section 2151.314 [shelter care placement], 2151.33 [pre-adjudication temporary placement], or 2151.353 [initial disposition following adjudication] of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home[.]

*In re K.H.*, 9th Dist. Summit No. 22765, 2005-Ohio-6323, ¶ 9. *See also In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 43. Father does not argue that the trial court failed to make the requisite findings at those prior hearings or that the findings were not proper. Consequently, Father has failed to demonstrate that the trial court failed to comply with the requirements of R.C. 2151.419(A). Father's second assignment of error is overruled.

III.

{¶40} The parents' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

---

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

SCOT STEVENSON
FOR THE COURT

SUTTON, P. J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

JAYSEN W. MERCER, Attorney at Law, for Appellant.

JASON D. WALLACE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

JOSEPH KERNAN, Guardian ad Litem.