[Cite as *In re E.C.-A.*, 2024-Ohio-2152.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: E.C.-A.

C.A. Nos.    30932
             30934

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 23-02-0153

DECISION AND JOURNAL ENTRY

Dated: June 5, 2024

SUTTON, Judge.

{¶1} Appellants, K.C. ("Mother") and W.A. ("Father"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed their minor child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother and Father have an extensive history with CSB involving their four older children, based on their long-term substance abuse and other parenting problems. Because those children are not parties to this appeal, only basic details about their cases are included in the record.

{¶3} The parents' two oldest children, P.A. and M.A., were adjudicated dependent because of Mother's drug problems in a 2014 juvenile case. They were removed and adjudicated dependent again in 2017 because of both parents' substance abuse problems. In the 2017 case, P.A. and M.A. were eventually placed in the legal custody of their paternal grandparents.

{¶4}    Two of the parents' younger children, K.A. and O.A., were removed from their custody shortly after their respective births in 2019 and 2020 because of their exposure to illegal drugs in utero, diagnoses with symptoms of drug withdrawal, and need for ongoing medical treatment after birth.  CSB developed case plans with reunification goals for each child, but the parents failed to substantially resolve their substance abuse problems.  The juvenile court involuntarily terminated both parents' rights to K.A. in May 2021, and O.A. in August 2022.

{¶5}    During June 2022, CSB filed new dependency cases pertaining to P.A. and M.A., because the grandparents were not meeting the children's needs and had been permitting the parents to have unsupervised, extended visits with the children even though they continued to struggle with unresolved substance abuse problems.  CSB later received temporary custody of P.A. and M.A and placed them together in a foster home.

{¶6}    The only child who is a party to this appeal is E.C.-A., born February 16, 2023.  Mother is the child's biological mother and Father is the only man alleged to be the child's biological father, but his paternity was not established during the trial court proceedings.  "Because CSB has not challenged Father's standing to appeal the permanent custody judgment of [E.C.-A.], and for ease of review, this Court will address Father's challenges to the permanent custody judgment[]." *In re E.W.*, 9th Dist. Summit Nos. 30802, 30803, and 30816, 2024-Ohio-235, ¶ 2.

{¶7}    CSB filed a complaint shortly after the birth of E.C.-A. because of Mother's drug use while pregnant, the child's resulting diagnosis of neonatal abstinence syndrome, the newborn's need for five weeks of treatment in the neonatal intensive care unit ("NICU") of Akron Children's Hospital, and the parents' lengthy history with CSB involving unresolved substance abuse and other parenting problems.  The juvenile court later adjudicated E.C.-A. an abused and neglected

child. With the agreement of the parents, the trial court placed the child in the temporary custody of CSB and adopted the original case plan as an order of the court.

{¶8} Shortly after this case began, CSB filed a motion for permanent custody of E.C.-A. based on the parents' prior termination of parental rights to K.A and O.A. and their ongoing substance abuse problems. Mother alternatively moved to have the child returned to her legal custody or placed in the legal custody of the maternal grandmother ("Grandmother"). The matter proceeded to a hearing on the competing dispositional motions during October 2023. At the hearing, Father joined in Mother's motion for the child to be placed in the legal custody of Grandmother and alternatively requested that the trial court extend temporary custody. Following the hearing, the trial court terminated parental rights and placed E.C.-A. in the permanent custody of CSB.

{¶9} Mother and Father appeal, raising a total of three assignments of error, which will be consolidated and rearranged to facilitate review.

II.

**MOTHER'S ASSIGNMENT OF ERROR**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT TERMINATED MOTHER'S PARENTAL RIGHTS AND PLACED THE CHILD IN THE PERMANENT CUSTODY OF [CSB]. THE RECORD REFLECTS THAT [CSB] VIOLATED THE DUTY ESTABLISHED BY OHIO LAW TO INVESTIGATE MATERNAL GRANDMOTHER AS A PLACEMENT OPTION AS REQUIRED BY STATUTE AND APPLICABLE RULES PROMULGATED UNDER THE OHIO ADMINISTRATIVE CODE.

**FATHER'S ASSIGNMENT OF ERROR II**

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PLAIN AND REVERSIBLE ERROR WHEN IT FAILED TO CONSIDER MATERNAL GRANDMOTHER AS A KINSHIP PLACEMENT AS REQUIRED BY OHIO LAW.

{¶10} Mother's sole assignment of error and Father's second assignment of error will be addressed together because they raise the same issue. They assert that, while E.C.-A. was in CSB's temporary custody, CSB should have placed her in the home of Grandmother rather than in a foster home. Through these assigned errors, they do not assert that the child should have been placed in Grandmother's legal custody, but only that Grandmother should have been considered as a kinship placement while E.C.-A. was in the temporary custody of CSB. *See* Ohio Adm.Code 5101:2-42-05(A); R.C. 2151.4116(A) (requiring the agency to make efforts to locate a suitable kinship placement for a child in its temporary custody, if one is available).

{¶11} The record reveals, however, that CSB considered Grandmother for placement of E.C.-A. but rejected her for several reasons. Moreover, Mother and Father did not raise this issue prior to or during the permanent custody hearing. By failing to timely raise this argument in the trial court, they have forfeited all but plain error on appeal. *See In re T.B.*, 9th Dist. Summit No. 27334, 2014-Ohio-4040, ¶ 12. In fact, the record reveals that the parents not only forfeited this issue, but they affirmatively waived any error by agreeing to the placement of E.C.-A. in a foster home. *See State v. Smith*, 9th Dist. Summit No. 28102, 2017-Ohio-1439, ¶ 7.

{¶12} CSB's original case plan, which was filed and later adopted as a court order in this case, indicates that both parents participated in its development and explicitly agreed with its provisions. Among other things, the case plan provided that the child "will be placed in a foster home upon discharge from the NICU." E.C.-A. was placed in a foster home, where she resided with two of her older siblings, O.A. and K.A. The foster parents had adopted one of those children and were in the process of adopting the other. After E.C.-A. was placed in foster care, there is nothing in the record to indicate that the parents ever opposed her placement there or requested that she be moved to Grandmother's home.

{¶13} Mother and Father have failed to demonstrate that the trial court committed plain error by failing to sua sponte determine, despite their waiver of any error, that CSB did not fulfill its statutory obligation to pursue a kinship placement for the child. Mother's assignment of error and Father's second assignment of error are overruled.

## FATHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED PERMANENT CUSTODY TO [CSB] AS THE TRIAL COURT'S DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶14} Father's first assignment of error is that the permanent custody judgment was against the manifest weight of the evidence. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S*., 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶15} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶16} Father begins by challenging a purported finding of the trial court that E.C.-A. had been in CSB's temporary custody for 12 months of a consecutive 22-month period. The trial court made no such finding, however, nor had CSB alleged that ground in its permanent custody motion. Instead, the trial court found, as alleged by CSB, that the first prong of the permanent custody test was satisfied because the child could not or should not be returned to the parents' home because they had previously had their parental rights terminated as to two older siblings of this child and they failed to prove, by clear and convincing evidence that, "notwithstanding [those] prior termination[s], [they] can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child." R.C. 2151.414(B)(1)(a); R.C. 2151.414(E)(11). Father does not challenge that finding, which was supported by certified final judgment entries from the juvenile cases of O.A. and K.A. and the parents did not dispute that they continued to struggle with unresolved drug problems and otherwise lacked stability in their lives.

{¶17} Next, the trial court found that permanent custody was in the best interest of the child. Father asserts that the trial court should have instead determined that legal custody to Grandmother was in the child's best interest. When reviewing the trial court's best interest determination, this Court focuses primarily on the specific factors set forth in R.C. 2151.414(D).

*In re M.S.*, 9th Dist. Summit Nos. 30506 and 30515, 2023-Ohio-1558, ¶ 25. In making its best interest determination, the trial court was required to consider the statutory best interest factors, which include: the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11. As explained above, the trial court found that R.C. 2151.414(E)(11) applied to the facts of this case, so it was required to consider that finding again in its best interest determination.

{¶18} The first best interest factor is the interaction and interrelationship of the child with her parents, relatives, caregivers, and significant other people in her life. R.C. 2151.414(D)(1)(a). This significant best interest factor "focuses on a critical component of the permanent custody test: whether there is a family relationship that should be preserved." *In re C.M.*, 9th Dist. Summit No. 21372, 2003-Ohio-5040, ¶ 11. Although Father asserts that CSB should have placed E.C.-A. with Grandmother because she is a relative, he develops no argument about why his parental rights and/or this family's relationship should be preserved. *See In re M.S.*, 2023-Ohio-1558, at ¶ 27. The parents did not dispute that, despite losing custody of all five of their children over a period of many years, they had made minimal efforts to improve their parenting ability. That evidence was directly relevant to whether there is a familial relationship that should be preserved. *See id.*

{¶19} The guardian ad litem spoke on behalf of E.C.-A., who was eight months old at the time of the hearing. She did not support legal custody to Grandmother because Grandmother continued to deny that the parents were abusing drugs, or she tended to minimize the significance of their drug use. Referencing Grandmother's history of allowing unauthorized contact between

the parents and their other children in prior cases, the guardian ad litem expressed concern that Grandmother would fail to set boundaries to consistently protect the child from her parents.

{¶20} The guardian ad litem believed that permanent custody was in the child's best interest. E.C.-A. was closely bonded to her foster parents and her two biological siblings who lived in that home. The foster parents had adopted one of the siblings, were in the process of adopting the other, and planned to adopt E.C.-A. if CSB received permanent custody.

{¶21} In its best interest determination, the trial court was required to again consider that the parents had their parental rights terminated as to two other children and they failed to present clear and convincing evidence that, despite those prior terminations, they could provide E.C.-A. with a safe and stable home. Mother continued to use drugs while pregnant with E.C.-A., and throughout this case, the same problem that caused her to lose custody of O.A. and K.A. several years earlier. Father admitted at the hearing that he had struggled with unresolved drug addiction for 15 years and was not prepared to have custody of this child. Despite continual involvement with CSB and case planning efforts dating back nearly ten years, both parents had made minimal progress toward achieving sobriety or improving their ability to provide a stable home for a young child.

{¶22} Given that the parents would retain residual parental rights if Grandmother were to receive legal custody, "[a]ny preservation of residual parental rights in this case would necessarily require assurances that the child[] would be protected from [her] parents[.]" *In re I.R.*, 9th Dist. Summit Nos. 30500, 30501, 30502, 30529, 30530, and 30531, 2023-Ohio-3044,¶ 38, appeal not allowed, 172 Ohio St.3d 1410, 2023-Ohio-4200. Both parents continued to use drugs, so there was an ongoing need to protect E.C.-A. around them, particularly given that she was still an infant and completely unable to protect herself.

**{¶23}** No evidence was presented at the hearing that Grandmother would be able to protect E.C.-A. from Mother and Father or that she understood the risk that they posed to the child because of their long-term instability and drug problems. CSB presented evidence about Grandmother's history in prior cases of failing to follow the requirements of CSB or the trial court to supervise the older children around their parents. Grandmother failed to recognize when the parents were under the influence of drugs, had not set appropriate boundaries for their visits with the older children, and had repeatedly allowed them to have unsupervised contact with those children.

**{¶24}** When Grandmother first approached CSB and the guardian ad litem about placement of E.C.-A., she was not considered to be a viable placement because Mother and Father were living in her home. *See In re M.S.* at ¶ 29. Grandmother was aware that the parents had been continually involved with CSB for many years; Mother had used drugs while pregnant with three of their children, who suffered from symptoms of drug withdrawal after birth; and the parents had lost custody of all five of their children because of drug problems. Nevertheless, Grandmother still did not seem to recognize the significance of either parent's ongoing drug problems.

**{¶25}** The trial court reasonably concluded that Grandmother did not demonstrate the ability to protect this infant child from her parents. The trial court did not lose its way by concluding that it was in the best interest of E.C.-A. to be placed in the permanent custody of CSB rather than in the legal custody of Grandmother. *See Eastley* at ¶ 20. Father's first assignment of error is overruled.

III.

**{¶26}** The parents' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

BETTY SUTTON
FOR THE COURT

STEVENSON, P. J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

JASON D. WALLACE, Attorney at Law, for Appellant.

DAVID M. LOWRY, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

LOUCILE POWERS, Guardian ad Litem.