[Cite as *In re J.H.*, 2024-Ohio-2795.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: J.H.
    J.H.
    Z.H.
    J.H
    Z.H.

C.A. Nos.    31035, 31036, 31037, 31038,
                    31039, 31041, 31042, 31043,
                    31044, 31045

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 21 04 251
                 DN 21 04 252
                 DN 21 04 253
                 DN 21 03 254
                 DN 21 04 255

DECISION AND JOURNAL ENTRY

Dated: July 24, 2024

---

FLAGG LANZINGER, Judge.

**{¶1}** Appellants, J.M. ("Mother") and J.H. ("Father"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed their five minor children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

**{¶2}** Mother and Father are the biological parents of J.H., born April 18, 2010; J.H., born April 1, 2011; Z.H., born December 17, 2014; J.H., born November 25, 2016; and Z.H., born August 5, 2019. They also have an older child who is now an adult and is not a party to this appeal.

{¶3} In a prior case in 2019, these five children, as well as their older sibling, were removed from their parents' custody because of both parents' substance abuse, Father's history of perpetrating domestic violence against Mother, and the parents' failure to meet the basic needs of the children. The juvenile court adjudicated the children neglected and dependent and later placed them in the temporary custody of CSB.

{¶4} Mother worked on the reunification goals of the case plan in that case, which primarily required her to achieve and maintain sobriety, obtain a protection order against Father, and demonstrate that she could provide a safe and stable home for her children. Mother made progress on the reunification goals of the case plan, which had included staying away from Father for her own safety, so the children were later returned to her custody under an order of protective supervision by CSB.

{¶5} During the 2019 case, Father was charged with aggravated possession of drugs, and, because he failed to comply with the conditions of his treatment in lieu of conviction, he was later convicted of that felony. By the time the children were returned to Mother's home, Father was incarcerated and CSB believed that he was not having any contact with Mother or the children. During December 2020, the juvenile court terminated protective supervision.

{¶6} As CSB was preparing to close the case, however, it received new referrals about Mother and the children, including that Father had been released from incarceration and was living in the family home. When CSB went to the home to investigate, the caseworker observed that the home was unkempt, the children were not being properly supervised, there were men's clothing and belongings in the basement, Mother had bruises on her feet and appeared to be under the influence of a substance, but Mother refused to allow the caseworker to take an oral swab for drug

testing. Mother also had not enrolled the school-aged children in school and was not meeting other basic needs of the children.

{¶7} Consequently, CSB filed new complaints pertaining to these five children, and the juvenile court ordered that the children be removed from Mother's custody and placed in the emergency temporary custody of CSB. The court later dismissed those cases for failure to comply with the procedural deadlines for the adjudicatory and dispositional hearings, but the children remained in the agency's emergency temporary custody. CSB promptly filed new complaints, which alleged that the children were neglected and dependent based on the same problems that led to the children's dependency and neglect adjudications in the 2019 case (substance abuse, unresolved history of domestic violence perpetrated by Father against Mother, and the parents' failure to meet the children's basic needs).

{¶8} The juvenile court later adjudicated the children dependent, placed them in the temporary custody of CSB, and adopted the case plan as an order of the court. At the time of disposition, because Father was facing potential incarceration, he told the caseworker that he did not want to be involved in the case plan. Consequently, the case plan did not include any reunification goals for Father. Father would ultimately be incarcerated for most of this case because he violated the conditions of his community control on his drug possession conviction and was convicted of violating the protection order against Mother, having weapons while under disability, and receiving stolen property.

{¶9} The case plan required Mother to obtain a substance abuse assessment, participate in all recommended treatment, and submit to drug testing when requested by the caseworker; obtain a psychological and/or parenting assessment and follow all treatment recommendations; obtain and maintain stable housing and income, and otherwise demonstrate the ability to meet the

basic needs of the children. Mother sporadically engaged in reunification services and visited the children. The children remained bonded to Mother, but Mother typically arrived late for the visits and sometimes arrived so late that the visits were cancelled, or she failed to appear altogether. Moreover, Mother's visits never expanded beyond weekly, two-hour visits that remained supervised or monitored because she did not demonstrate sobriety and she repeatedly brought her cell phone to visits, despite being prohibited from doing so, and allowed the children to have unauthorized telephone contact with Father.

{¶10} CSB initially moved for permanent custody on January 4, 2022. Following a hearing, the trial court denied that motion, concluding that permanent custody was not in the best interest of the children at that time. The trial court instead granted a six-month extension of temporary custody, which would end on April 7, 2023. The trial court focused its best interest determination on the children's wishes to be reunified with Mother, and evidence that Mother had made some progress on the case plan. Specifically, Mother had secured stable housing and appeared to have ended her physically violent relationship with Father, who was then incarcerated.

{¶11} In its judgment entry, the trial court observed that "Mother still has much to accomplish" on the reunification goals of the case plan. It specifically emphasized her need to consistently visit the children and engage in mental health and chemical dependency counseling, and that she needed to demonstrate that she will not "facilitate contact between the children and their father under any circumstances."

{¶12} Over the next several months, Mother's participation in reunification services remained inconsistent. She did not consistently engage in substance abuse treatment or mental health counseling, and she refused to submit to drug screening when the caseworker asked. Mother's visits were changed from monitored back to closely supervised because she continued to

sneak her cell phone into visits and asked the children to misbehave at the foster home. Mother also failed to demonstrate sustained sobriety or any insight into why her children were removed from her home and remained placed outside her custody.

{¶13} On March 2, 2023, CSB again moved for permanent custody of these children. Shortly afterward, Mother began a substance abuse treatment program at one agency and parenting classes at another, but she did not consistently participate in either program, so she made minimal progress. Notably, Mother continued to test positive for alcohol and illegal substances, did not demonstrate that she could supervise her children without assistance, and she did not gain insight into the reasons for the dependency adjudications of her children and placement outside her custody in two separate cases. Mother accepted no responsibility for her family's involvement with CSB and the juvenile court but continued to blame other people and circumstances.

{¶14} Six months later, Father was released from incarceration and contacted the caseworker about beginning visits with the children. Father had a few supervised visits with the children before the permanent custody hearing commenced. Although Father would later testify that he also asked to be included as a participant on the case plan, the caseworker disputed that claim. According to the caseworker, she again asked Father if he wanted to be included on the case plan with goals for reunification, but he again declined and told her that he supported Mother receiving custody of the children.

{¶15} The trial court held a hearing on the second permanent custody motion over two days in October 2023, and an additional day in February 2024. Mother alternatively moved for legal custody. Father, through trial counsel, orally supported Mother's motion and alternatively requested that he receive legal custody of the children. Following the hearing, the trial court terminated parental rights and placed these children in the permanent custody of CSB. Mother

and Father appeal and raise a total of four assignments of error. Some of the assignments of error will be consolidated or addressed out of order to facilitate review.

II.

### MOTHER'S ASSIGNMENT OF ERROR I

THE COURT ERRED TO MOTHER[']S DETRIMENT WHEN IT VIOLATED HER DUE PROCESS RIGHTS BY ORDERING HER CHILDREN INTO PERMANENT CUSTODY IN ABROGATION OF R.C. §2151.413(E).

### MOTHER'S ASSIGNMENT OF ERROR II

THE COURT ERRED TO MOTHER[']S DETRIMENT WHEN IT VIOLATED HER EQUAL PROTECTION RIGHTS BY ORDERING HER CHILDREN INTO PERMANENT CUSTODY WHEN THE PROCEDURAL REQUIREMENTS ARE UNDEFINED WITH RESPECT TO ALL SIMILARLY SITUATED INDIVIDUALS.

{¶16} Mother's assignments of error assert that her fundamental parental rights were not adequately protected in this case because, prior to moving for permanent custody, CSB failed to comply with the requirement of R.C. 2151.413(E) that an agency moving for permanent custody of a child "shall include in the case plan . . . a specific plan of the agency's actions to seek an adoptive family for the child and to prepare the child for adoption." Mother challenges both the application of R.C. 2151.413(E) to the facts of this case, as well as the constitutionality of the statute.

{¶17} Mother failed to preserve her assignments of error for appellate review, however. She did not raise this issue before or during the permanent custody hearing and, therefore, has forfeited all but plain error. *In re E.C.-A.*, 2024-Ohio-2152, ¶ 11 (9th Dist). Mother has not developed a plain error argument on appeal and, in fact, concedes that CSB did not violate R.C. 2151.413(E), as it has been interpreted by the Ohio Supreme Court. In *In re T.R.*, 2008-Ohio-5219, the Court held that, although R.C. 2151.413(E) requires a children services agency that files

a motion for permanent custody to include an adoption plan in the case plan, the statute does not include a "temporal requirement" to indicate "*when* such an adoption plan must be added to the existing case plan." (Emphasis sic.) *Id*. at ¶ 9-10. Therefore, the Court specifically concluded that "R.C. 2151.413(E) does not require" the agency "to update the child's case plan with an adoption plan before the juvenile court grants the [permanent custody] motion." *Id*. at ¶ 12.

{¶18} In other words, Mother concedes that her argument about the temporal requirement of R.C. 2151.413(E) lacks merit. The thrust of her challenge pertains to the constitutionality of the statute. Because Mother has not developed a plain error argument to support her due process or equal protection arguments, this Court declines to reach the merits of her assignments of error. *See In re T.B.*, 2014-Ohio-4040, ¶ 12 (9th Dist.). Mother's assignments of error are overruled.

## FATHER'S ASSIGNMENT OF ERROR II

> THE TRIAL COURT ERRED WHEN IT FOUND IT WAS IN THE BEST INTEREST OF THE CHILDREN TO GRANT PERMANENT CUSTODY TO CSB BECAUSE THAT DECISION WAS NOT IN THE BEST INTEREST OF THE CHILD[REN], AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

Through his second assignment of error, Father asserts that the trial court's permanent custody decision was against the manifest weight of the evidence. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C.

2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996).

{¶19} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶20} On the first prong of the permanent custody test, CSB had alleged several alternative grounds, including that the parents had failed to remedy the conditions that caused the children to remain placed outside the home, and that the children had been in the temporary custody of CSB for more than 12 months of a consecutive 22-month period. R.C. 2151.414(B)(1)(a), 2151.314(E)(1), and 2151.414(B)(1)(d). The trial court based its first prong finding on only one of those grounds: that the children had been in the agency's temporary custody for more than 12 months at the time it moved for permanent custody. Father does not dispute that finding, which was supported by the record. The children were adjudicated on July 1, 2021, and CSB moved for permanent custody on March 2, 2023, 20 months later.

{¶21} Next, the trial court was required to find that permanent custody was in the best interest of the children. Instead of terminating his parental rights, Father implicitly argues that the trial court should have found that one of two alternative dispositions was in the best interest of his children: (1) an extension of temporary custody so he would have a "chance" to work on reunification services to prove that he could appropriately parent his children; or (2) place the

children in his legal custody. Because this case had been open for almost three years by the time the permanent custody hearing concluded, the trial court lacked authority to extend temporary custody any longer. *See* R.C. 2151.415(D)(4) (the trial court "shall not order an existing temporary custody order to continue beyond two years after the date on which the complaint was filed[.]").

{¶22} Therefore, this Court will focus its review on whether it was in the best interest of the children to be placed in the permanent custody of CSB or the legal custody of Father. When reviewing the trial court's best interest determination, this Court focuses primarily on the specific factors set forth in R.C. 2151.414(D). *In re M.S.*, 2023-Ohio-1558, ¶ 25 (9th Dist.). In making its best interest determination, the trial court was required to consider the statutory best interest factors, which include: the interaction and interrelationships of the children, their wishes, the custodial history of the children, their need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 2009-Ohio-6284, ¶ 11 (9th Dist.). None of the factors set forth in R.C. 2151.414(E)(7)-(11) apply in this case.

{¶23} While the children were removed from the home for nearly three years during this case, their interaction with Father was limited to a few supervised visits after Father was released from nearly two years of incarceration, many months after CSB had moved for permanent custody. During the two and a half months between the second and third days of the permanent custody hearing, Father stopped visiting the children altogether.

{¶24} In contrast, the children had positive daily interaction with each other and the foster parent. All five children lived together in the same foster home throughout this case and were closely bonded to each other and the foster parent. The evidence was not disputed that the children felt safe and comfortable in the foster home and that all their needs were being met.

{¶25} The older children had repeatedly expressed a desire to live with Mother, but there is no evidence in the record that they ever expressed that they wanted to live with Father. The guardian ad litem believed that permanent custody was in the children's best interest because neither parent was prepared to provide them with a stable home. She also emphasized that the children were doing very well and had assimilated into the foster family.

{¶26} Prior to this case, the children had lived with Mother and Father, where they continually had been exposed to Father's "very physical" and "bloody" domestic violence against Mother. The older children had described some of the incidents to the caseworker and expressed their fear of those circumstances. All five children began ongoing counseling during this case, geared to their respective age levels, to address that past trauma.

{¶27} During this case, and the 2019 case, the children had been moved in and out of the parents' custody and placed in temporary placements for nearly four years. The youngest child had spent most of her life in CSB custody. Moreover, the prolonged uncertainty about their ultimate placement caused the children to suffer increased anxiety, particularly the oldest two.

{¶28} These children needed a stable permanent home and CSB had been unable to find a suitable relative who was willing to take custody of any of them, let alone all five. Although Father asserts that he was prepared to provide them with a home, he had just recently been released from incarceration. Aside from concerns about his recent criminal history and his unresolved history of domestic violence, instability, and other parenting problems, he had no place to live at the time of the hearing. Father testified that he would have housing soon, but it had not been approved by CSB and he did not otherwise demonstrate that he would be able to keep that housing or that it would meet the needs of five children.

{¶29} The foster parent, who had demonstrated the ability to meet the children's needs in a safe and stable home for more than two years, was willing to adopt them as a sibling group if CSB received permanent custody. The trial court reasonably concluded that a legally secure permanent placement would be achieved by placing the children in the permanent custody of CSB.

{¶30} Given the evidence before the trial court concerning the children's best interest, Father has failed to demonstrate that the court lost its way by terminating parental rights and placing the children in the permanent custody of CSB. *See Eastley* at ¶ 20. Father's second assignment of error is overruled.

### FATHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PLAIN AND REVERSIBLE ERROR WHEN IT GRANTED PERMANENT CUSTODY TO [CSB] WITHOUT CLEAR AND CONVINCING EVIDENCE THAT CSB PROVIDED REASONABLE REUNIFICATION EFFORTS PURSUANT TO R.C. 2151.419 OR REASONABLE EFFORTS TO FINALIZE THE PERMANENCY PLAN PURSUANT TO R.C. 2151.417(C).

{¶31} Father's first assignment of error is that the trial court erred in terminating his parental rights because CSB focused its reunification efforts on Mother and did not provide him with statutorily required reunification services. He asserts that the "record is completely devoid of any evidence" about CSB providing him with reunification services.

{¶32} Father first relies on the requirement of R.C. 2151.419(A)(1) that CSB provide him with reasonable reunification services. R.C. 2151.419(A) specifically required CSB to establish that it made reasonable efforts toward reunification or to prevent the continued removal of the children from the home:

at any hearing held pursuant to section 2151.28 [shelter care], division (E) of section 2151.31 [ex parte emergency temporary custody], or section 2151.314 [shelter care placement], 2151.33 [pre-adjudication temporary placement], or 2151.353 [disposition following adjudication] of the Revised Code at which the

court removes a child from the child's home or continues the removal of a child from the child's home[.]

R.C. 2151.419(A). *See also In re C.F.*, 2007-Ohio-1104, ¶ 43. Father does not argue that the trial court failed to make the requisite findings at those prior hearings or that the findings were not proper.

{¶33} Father's primary argument is that CSB did not include him on the case plan. At the hearing, the caseworker testified that Father repeatedly told her that he did not want to be included on the case plan. Although Father disputed the caseworker's testimony, he did not file an objection to the original or any of the amended case plans adopted by the trial court. The case plans included no reunification services for Father and explicitly stated that Father had communicated with the caseworker that "he does not wish to be on the case plan" and that he does not "have any concerns he wishes to address." If Father believed that the case plan incorrectly stated his wishes or that he later decided that he wanted to be added to the case plan, he could have objected to the original or amended case plans or filed proposed case plan amendments, but he did not. *In re L.A.*, 2023-Ohio-1877, ¶ 10 (9th Dist.).

{¶34} Father further asserts that CSB was required to provide him with case plan reunification services because it based its permanent custody motion, in part, on R.C. 2151.414(B)(1)(a) and 2151.414(E)(1), which required it to prove that "notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents[,]" Father had "failed continuously and repeatedly to substantially remedy the conditions" causing the children to be placed outside the home. As this Court noted in the review of Father's second assignment of error, however, the trial court did not base its permanent custody decision on R.C. 2151.414(E)(1), so that provision's language has no bearing on this appeal.

**{¶35}** The record reveals that Father did not receive case plan reunification services in this case because he repeatedly informed CSB that he did not want to be included on the case plan. Consequently, he has failed to demonstrate that CSB did not fulfill its statutory obligation to him. Father's first assignment of error is overruled.

III.

**{¶36}** Mother's and Father's assignments of error are overruled. The judgment of Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

JILL FLAGG LANZINGER
FOR THE COURT

STEVENSON, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

ALEXANDRA HULL, Attorney at Law, for Appellant.

JAYSEN W. MERCER, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and AARON B. CAMPBELL, Assistant Prosecuting Attorney, for Appellee.

SHUBHRA N. AGARWAL, Attorney at Law, for Minor Children.

LINDA SELL, Guardian ad Litem.