[Cite as *In re Q.S.*, 2023-Ohio-3612.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

IN RE: Q.S.
     S.S.

C.A. Nos.     30635
                  30636

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.   DN 20 03 0200
             DN 21 01 0040

DECISION AND JOURNAL ENTRY

Dated: October 4, 2023

HENSAL, Presiding Judge.

{¶1}    Appellant, Q.S. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed his two minor children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2}    Father is the biological father of the two children who are parties to this appeal. The children's mother ("Mother") is deceased. Mother died of an unknown cause after both parents appealed the final judgment, which will be addressed in more detail below.

{¶3}    Father is the biological father of Q.S., born February 26, 2020; and S.S., born at 27 weeks' gestation on November 15, 2020. Each child was removed from the parents' custody shortly after birth because of Mother's ongoing drug abuse and each child's need for extended hospital treatment after birth due to drug exposure in utero and because of the premature birth of

S.S. The complaints also focused on the facts that: Mother's parental rights to two older siblings were involuntarily terminated in 2016 due to her history of substance abuse; the parents lacked stable income and housing; and the parents remained together and had a history of domestic violence between them. The trial court adjudicated Q.S. and later S.S. as dependent children.

{¶4} At the time S.S. was born, Father was incarcerated. He had been arrested and was later convicted on federal charges involving his possession of a firearm. It is unclear from the record whether Father's conviction was based on an independent crime or the violation of the conditions of his probation on a prior conviction. Father was incarcerated throughout the remainder of the trial court proceedings. After Father was incarcerated, because he would be unavailable to care for the children for an extended period, CSB's reunification efforts focused on Mother and her need to achieve and maintain sobriety.

{¶5} The children spent most of this case in the temporary custody of CSB, living together in the same foster home, because Mother was unable to maintain sobriety. For the first several months of this case, Mother worked on drug treatment, achieved a period of sobriety, and was working toward reunification with Q.S. Mother relapsed, however, and began abusing drugs after Father was arrested and she discovered that she was pregnant again. Mother reengaged in drug treatment and worked toward achieving sobriety again.

{¶6} CSB initially moved for permanent custody of both children on August 17, 2021. Several months later, shortly before the scheduled hearing, CSB withdrew its permanent custody motion. Upon CSB's request, the trial court granted a six-month extension of temporary custody of the younger child, S.S., and placed Q.S. in the legal custody of Mother under the protective supervision of CSB. Less than two months later, however, the trial court removed Q.S. from Mother's custody because of concerns that she had again relapsed and was abusing drugs.

**{¶7}** Shortly afterward, CSB filed a second motion for permanent custody of the children. The matter proceeded to a final dispositional hearing on CSB's motion and Mother's alternative motion for legal custody of both children. Father did not appear at the hearing because he was still in federal prison. His appointed counsel represented him at the hearing and advocated in support of Mother's motion for legal custody.

**{¶8}** Following the hearing, the trial court terminated parental rights and placed Q.S. and S.S. in the permanent custody of CSB. Father and Mother filed timely appeals and each parent submitted a brief on appeal.

**{¶9}** When CSB filed its brief in response to the parents' briefs, it also filed a notice with this Court that Mother had recently passed away. CSB moved to dismiss both appeals, arguing that they were moot because both parents had focused their trial and appellate arguments on whether the children should be returned to Mother's custody. Father opposed dismissal of his appeal, asserting that it is not moot because his own parental rights are still at stake. This Court dismissed only Mother's appeal and we granted Father leave to file a revised brief. Father did not file a revised brief and relies on his original brief filed before Mother's death. This Court will address his two assignments of error together.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION IN ITS GRANT OF PERMANENT CUSTODY TO [CSB] AS SUCH DECISION WAS NOT SUPPORTED BY THE EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT DENIED THE PARENTS THEIR DUE-PROCESS RIGHTS GUARANTEED TO THEM BY THE UNITED STATES AND OHIO CONSTITUTIONS.

{¶10} Father's defense in the trial court and his assignments of error on appeal were prepared before the death of Mother. Because Father was incarcerated and Mother was the more viable option for reunification, the parties focused their arguments and evidence on whether Mother was prepared to provide the children with a suitable home. In fact, the appellate record and arguments before this Court focus almost exclusively on Mother, with very little information about Father.

{¶11} When CSB moved to dismiss the appeals of both parents because of Mother's death, Father responded that his appeal was not moot, but he did not submit a revised appellate brief to argue for the preservation of his own parental rights. In his brief in opposition to CSB's motion to dismiss, Father asserted only that he "is scheduled to be released from prison in the late Winter or early Spring of 2024[,]" but the record indicates that Father is not due to be released until "the fall of 2024."

{¶12} Regardless, Father has not developed an argument to support his implicit position that, at the time of the permanent custody decision, the trial court erred in terminating Father's parental rights. Because Father's fundamental parental rights are at stake, however, this Court will review the evidence before the trial court pertaining to the termination of Father's parental rights.

{¶13} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another

child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under Revised Code Section 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under Section 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶14} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶15} The trial court found that the first prong of the permanent custody test was satisfied in this case because both Q.S. and S.S. had been in the temporary custody of CSB for at least 12 months of a consecutive 22-month period. R.C. 2151.414(B)(1)(d). This finding applied to both parents and Father did not contest that finding in his brief.

{¶16} Consequently, this Court will review the trial court's decision that permanent custody was in the best interest of the children, as it pertains to Father. This Court's best interest review focuses on the best interest factors set forth in Section 2151.414(D). In making its best

interest determination, the trial court was required to consider the statutory best interest factors, which include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in Section 2151.414(E)(7)-(11) apply.[1]  R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

{¶17}  The first best interest factor, the interaction and interrelationship of the children with significant adults in their lives, "'focuses on a critical component of the permanent custody test: whether there is a family relationship that should be preserved.'" *In re M.S.*, 9th Dist. Summit Nos. 30506 and 30515, 2023-Ohio-1558, ¶ 27, quoting *In re C.M.*, 9th Dist. Summit No. 21372, 2003-Ohio-5040, ¶ 11.  Given that Mother is no longer alive and CSB had presented evidence that the children were not involved with any other biological relatives, the only family member at issue in this appeal is Father.

{¶18}  At the hearing, minimal evidence was presented about Father or his involvement in this case.  Father had some involvement with Q.S. during the first seven months of the child's life, but he had never met S.S. because he has been incarcerated since before she was born.  The caseworker testified that, throughout his incarceration, Father had not sought information about or requested to have contact with the children.  The guardian ad litem opined that there was no parent-child relationship between Father and the children because Father had not seen almost three-year-old Q.S. in more than two years and had never met S.S.

---

[1] The trial court did not find that any of those provisions applied to the facts of this case.

**{¶19}** The children were too young to express their wishes, so the guardian ad litem spoke on their behalf. She opined that permanent custody was in the best interest of these children so they could achieve stability in their lives. The children, who were two and almost three years old at the time of the hearing, had lived in temporary placements for their entire lives. They needed a legally secure permanent placement, and CSB had been unable to find any suitable relatives to provide them with a stable home. Father had no relationship with the children and, at the time of the hearing, was facing another year and a half of incarceration. The trial court therefore concluded that a legally secure permanent placement would be achieved only by placing the children in the permanent custody of CSB.

**{¶20}** Based on a thorough review of the record in this case and considering that placement with Mother is no longer possible, this Court can only conclude that the trial court's permanent custody decision was fully supported by the evidence. Father's assignments of error are overruled.

III.

**{¶21}** Father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

---

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

STEVENSON, J.
FLAGG LANZINGER, J.
CONCUR.


APPEARANCES:

VICTOR O. CHUKWUDELUNZU, Attorney at Law, for Appellant.

THOMAS C. LOEPP, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

LEONARD J. BREIDING, II, Guardian ad Litem.