[Cite as *In re A.B.*, 2025-Ohio-527.]

STATE OF OHIO        )            IN THE COURT OF APPEALS
                    )ss:         NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT     )

IN RE: A.B.                           C.A. No.      31189

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 23-01-61

DECISION AND JOURNAL ENTRY

Dated: February 19, 2025

SUTTON, Judge.

{¶1} Appellant, C.B. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her minor child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother is the biological mother of A.B., born August 12, 2012. A.B.'s father did not participate in the trial court proceedings or appeal from the trial court's judgment. The trial court proceedings also involved some of Mother's other children, but they are not parties to this appeal.

{¶3} Mother and A.B. have a lengthy history with CSB and the juvenile court, dating back to March 2018, because of Mother's long-term substance abuse, unstable mental health, mistreatment of her children, and failure to maintain a safe and stable home. A.B. was removed

from Mother's custody in the 2018 case for approximately two years and was removed again for three months during 2021 and two months during 2022.

{¶4} CSB filed the complaint in this case on January 30, 2023, after A.B. was removed from Mother's custody pursuant to Juv.R. 6. The agency's concerns again involved Mother's substance abuse and mental health problems and her inability to otherwise provide for her child's basic needs. Mother later waived her right to contested hearings and agreed to the trial court adjudicating the child dependent, placing her in the temporary custody of CSB, and adopting the case plan as an order of the court.

{¶5} During the first year of this case, however, Mother did not engage in any reunification services and continued to abuse drugs and exhibit symptoms of untreated mental illness. Mother was arrested for forgery and receiving stolen property and was later placed in a treatment in lieu of conviction program through the criminal court. For the next eight months, Mother did not comply with any of the treatment or drug testing requirements of that program.

{¶6} Mother began to engage in mental health counseling during January 2024, but, according to her counselor and Mother's own admission, she made minimal progress toward stabilizing her mental health during the following six months, was struggling just to meet her own basic needs, and was still in "survival mode[.]" Mother's counselor had recommended a more intensive level of counseling, but Mother did not follow through with intensive outpatient or residential treatment. Mother also failed to begin drug counseling and eventually submitted drug tests that tested positive for high levels of methamphetamine and amphetamine, indicating that she had used both drugs recently and was a regular user.

{¶7} A.B., who suffered from her own mental health problems, eventually made progress in mental health treatment during this case. A.B. was initially placed in the home of an adult half-

sister ("Sister") but was later removed from that home because she kept running away and exhibiting aggressive behavior and other symptoms of untreated mental illness. A.B. was placed in a residential treatment facility during March 2023. She engaged in residential treatment for approximately nine months to address her diagnoses of post-traumatic stress disorder, oppositional defiant disorder, and attention deficit hyperactivity disorder. A.B. was released from residential treatment near the end of 2023.

{¶8} Shortly afterward, the trial court granted CSB's request for a six-month extension of temporary custody, not because of any case plan progress by Mother but because A.B. was transitioning back into Sister's home. At that time, Sister had expressed interest in obtaining legal custody of A.B. and CSB requested more time to pursue that potential placement. The following month, however, A.B. again began to exhibit aggressive behavior, tried to run away from Sister's home, and assaulted Sister. A.B. was admitted to Akron Children's Hospital for mental health treatment and was then placed in another residential treatment facility for several more months of ongoing counseling.

{¶9} By then, Sister had become concerned about the safety of her own, younger children around A.B., and was no longer willing to have the child placed in her home. Because CSB had found no other relatives who would provide A.B. with a suitable permanent home, CSB moved for permanent custody of A.B. Mother alternatively requested legal custody of A.B. or a second six-month extension of temporary custody.

{¶10} A final hearing was held before the juvenile court judge on July 30, 2024. During the hearing, Mother admitted that she had struggled with mental health and substance abuse problems for many years and that she had failed to comply with the mental health or drug treatment requirements of the case plan. Mother testified that, 18 months after A.B. was removed from her

custody, she had finally realized that she needed help and was prepared to enter residential treatment as soon as a bed was available. Throughout her testimony, however, Mother blamed her lack of case plan compliance on CSB removing A.B. from her home and suggested that she would be fine if the court returned A.B. to her custody.

{¶11} Following the hearing, the trial court terminated parental rights and placed A.B. in the permanent custody of CSB. Mother appeals and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

> THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED PERMANENT CUSTODY TO [CSB] AS THE TRIAL COURT'S DECISION WAS NOT SUPPORTED BY EVIDENCE BEYOND A REASONABLE DOUBT AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶12} Mother's sole assignment of error is that the trial court's permanent custody judgment was against the manifest weight of the evidence. Although Mother's assignment of error states that the judgment was not supported by "evidence beyond a reasonable doubt[,]" her legal argument explicitly recognizes that a permanent custody judgment requires the lesser standard of "clear and convincing evidence."

{¶13} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on

an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996).

**{¶14}** In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

**{¶15}** On the first prong of the permanent custody test, the trial court found several alternative grounds: that A.B. had been in the temporary custody of CSB for at least 12 months of a consecutive 22-month period under R.C. 2151.414(B)(1)(d); and that the child could not be returned to Mother's custody within a reasonable time or should not be returned to her custody based on three factors under R.C. 2151.414(E): that Mother had failed to substantially remedy the conditions that caused the child to be placed outside the home under R.C. 2151.414(E)(1); and that Mother had demonstrated a lack of commitment to meet the child's basic needs under R.C. 2151.414(E)(4) and (14). Mother does not dispute any of those findings on appeal. In fact, she explicitly concedes that CSB established that the child cannot or should not be returned to her custody. *See* R.C. 2151.414(B)(1)(a).

**{¶16}** Mother confines her challenge on appeal to whether the evidence supported the trial court's finding that permanent custody was in the best interest of the child. When reviewing the trial court's best interest determination, this Court focuses primarily on the specific factors set forth in R.C. 2151.414(D). *In re M.S.*, 2023-Ohio-1558, ¶ 25 (9th Dist.). In making its best interest

determination, the trial court was required to consider the statutory best interest factors, which include: the interaction and interrelationships of the child, her wishes, the custodial history of the child, her need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see also In re R.G.*, 2009-Ohio-6284, ¶ 11 (9th Dist.).

{¶17} As an alternative disposition to permanent custody, Mother asserts that it was in the best interest of A.B. for the trial court to extend temporary custody for another six months so Mother would have more time to work on the reunification goals of the case plan. R.C. 2151.415(D)(2) authorized the juvenile court to grant a second extension of temporary custody, however, only if it found, "by clear and convincing evidence" that an extension was in the child's best interest, "there ha[d] been substantial additional progress" on the case plan since the first extension, and "there [was] reasonable cause to believe that the child will be reunified with one of the parents . . . before the expiration of the additional extension period."

{¶18} In this case, Mother does not dispute the trial court's finding under R.C. 2151.414(E)(1), based on clear and convincing evidence, that she had not made "substantial" progress on the reunification goals of the case plan. In fact, the trial court explicitly denied Mother's request for another extension of temporary custody. The trial court emphasized Mother's minimal progress on the reunification goals of the case plan and found that reunification with Mother was not "even possible, let alone likely to occur, within the next six months."

{¶19} Furthermore, the evidence presented at the hearing supported the trial court's finding that permanent custody was in the best interest of A.B. The first best interest factor, the interaction and interrelationships between A.B. and other people in her life, weighed in favor of permanent custody. During this case, Mother had no authorized contact with A.B. Mother's only

contact with the child was when A.B. made unauthorized phone calls to Mother when she ran away from her out-of-home placements.

{¶20} At the hearing, Mother repeatedly testified that CSB would not permit her to have any contact with A.B., but her testimony was contradicted by other evidence in the record. Mother's ability to have face-to-face contact with A.B. was limited due to the child's placement in residential treatment facilities and her strained relationship with Mother. The caseworker informed Mother that she was permitted to schedule phone calls with A.B., but Mother never took advantage of that opportunity to have contact with her child.

{¶21} Because A.B. became so upset that Mother did not care enough to arrange phone calls with her, further restrictions were placed on Mother's ability to contact the child. The caseworker told Mother that she could write letters to A.B., which the caseworker would review for appropriateness before sending them to A.B., but Mother refused to write letters to the child. Mother explained that she could not agree to the caseworker reviewing her communication with her child and she did not believe that a piece of paper would show A.B. that she cared. Because Mother did not take advantage of the opportunities CSB allowed her to maintain contact with A.B., she had almost no contact with the child throughout the 18 months that this case was pending.

{¶22} After A.B. reengaged in residential treatment at a new facility during February 2024, she remained there throughout this case. At the hearing, her counselor testified that A.B. was making good progress, had become less physically aggressive, and would probably be released from that facility in approximately three months. A.B. did not want to talk about Mother, however, and had not yet begun to disclose the trauma that she endured while living in Mother's custody. A.B. would require ongoing counseling to address the past traumas in her life.

{¶23} A.B.'s wishes were expressed by the guardian ad litem. A.B. wanted to return to Mother's custody at the beginning of this case. By the end of the case, however, A.B. consistently expressed that she did not want to return to Mother's custody. The guardian ad litem expressed disappointment that Mother had made no effort to have any contact with A.B. during this case, which was disappointing and hurtful to A.B. because Mother's lack of contact caused the child to believe that she did not matter to Mother. The guardian ad litem further emphasized Mother's lack of progress on the case plan and her refusal to maintain contact with the caseworker or her. She opined that permanent custody was in the child's best interest.

{¶24} A.B.'s custodial history for 18 months during this case was spent in the temporary custody of CSB. During the past 6 years, A.B. had moved in and out of Mother's custody numerous times, had spent more than four years living outside her custody, and had lived in 16 different temporary placements during that time. A.B. needed a legally secure permanent placement, particularly because of her unstable mental health. Mother was not able to provide the child with a safe and stable home and CSB had found no suitable relatives who were willing to do so. The trial court reasonably concluded that a legally secure permanent placement would be achieved by terminating Mother's parental rights so A.B. could be placed for adoption.

{¶25} Mother has failed to demonstrate that the trial court lost its way by concluding that permanent custody to CSB was in the best interest of A.B. Mother's assignment of error is overruled.

III.

{¶26} Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETTY SUTTON
FOR THE COURT

STEVENSON, P. J.
CARR, J.
CONCUR.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and AARON B. CAMPBELL, Assistant Prosecuting Attorney, for Appellee.

MICHELLE TOMER, Guardian ad Litem.