[Cite as *In re C.B.*, 2025-Ohio-5614.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: C.B.

C.A. No.     31520

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 23 01 0062

DECISION AND JOURNAL ENTRY

Dated: December 17, 2025

STEVENSON, Judge.

{¶1}  Appellant, C.B. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her minor child in the permanent custody of Summit County Children Services Board ("CSB").  This Court affirms.

I.

{¶2}  Mother is the biological mother of C.B., born August 1, 2009.  The child's father ("Father") did not appeal the trial court's judgment.  Mother has two other children with Father who are not parties to this appeal but some facts pertaining to them are relevant here.

{¶3}  Mother has an extensive history with CSB dating back to 2018 because of her long history of methamphetamine abuse, untreated mental health symptoms, and failure to maintain a suitable home for her children.  The 2018 case also involved allegations that Mother's oldest child, T.S., had sexually abused his younger sisters, C.B. and A.B.  The juvenile court removed C.B. and

A.B. from Mother's custody during March 2018 and later adjudicated them abused and dependent. They remained placed outside Mother's home for nearly three years. During February 2021, the juvenile court returned them to Mother's custody under an order of protective supervision.

{¶4} After the court terminated protective supervision, it removed C.B. and A.B. from the home shortly afterward for a three-month period. They were also removed from the home briefly during July 2022. Details about the shorter 2021 and 2022 cases are not explained in this record except that they also pertained to concerns about Mother's substance abuse and her failure to provide the children with a safe and stable home.

{¶5} This case began on January 30, 2023, when CSB filed complaints to allege that then 13-year-old C.B. and 10-year-old A.B. were dependent children. The allegations in this case focused on the children's exposure to Mother's ongoing substance abuse and unstable mental health, her physical mistreatment of them, and that A.B. had repeatedly run away from the home to escape mistreatment by Mother.

{¶6} Mother later waived her right to an adjudicatory hearing and stipulated that A.B. and C.B. were dependent children under R.C. 2151.04(C) and (D) based on the facts alleged in the complaint. Both children were later placed in the temporary custody of CSB. CSB placed C.B. in the home of her adult half-sister ("Sister"), where she remained for most of this case. Sister is a child of C.B.'s father and apparently does not have a good relationship with Mother or C.B.'s other maternal relatives.

{¶7} At disposition, the trial court also adopted the case plan as an order of the court. The case plan required Mother to engage in ongoing mental health counseling and drug treatment, submit to regular drug testing, and demonstrate that she had stable income and housing and was able to meet the basic needs of her children.

{¶8}   Mother did not engage in any treatment services during the first year of this case and did not maintain contact with CSB.  She submitted drug swabs for testing on May 30 and June 13, 2024, both of which tested positive for methamphetamine, amphetamine, and THC.  Mother submitted no further samples for drug testing for the remainder of this case.  Near the end of this case, Mother insisted that she was recently sober but never complied with the case plan requirement that she appear for scheduled drug swabs to verify her sobriety.

{¶9}   Mother did not maintain regular contact with CSB and, even when the caseworker was able to schedule home visits, Mother was not home or did not answer the door when the caseworker came to meet her.  Consequently, although Mother lived in the same home throughout this case, CSB was never able to assess the home to determine whether it was appropriate for C.B.

{¶10}  Mother eventually engaged in some mental health counseling and drug treatment after she was arrested on criminal charges, and the criminal court ordered treatment as part of an intervention in lieu of incarceration program.  Mother began mental health counseling but stopped after a few months.  She entered residential drug treatment at three different points during this case but never completed a residential or outpatient drug treatment program.  The criminal court ultimately terminated Mother from the intervention program and convicted her of forgery and receiving stolen property.

{¶11}  On March 24, 2024, CSB moved for permanent custody of both C.B. and A.B.  Shortly afterward, CSB withdrew the permanent custody motion as to C.B. because Sister had expressed a willingness to pursue legal custody.  A.B.'s case proceeded to a permanent custody hearing during July 2024.  Following the hearing, the trial court terminated both parents' parental rights to A.B. and placed her in CSB's permanent custody on August 1, 2024.  This Court later affirmed that judgment on appeal.  *In re A.B.*, 2025-Ohio-527, ¶ 26 (9th Dist.).

{¶12} Pursuant to the case plan, C.B. had been engaging in mental health counseling during this case to address her behavioral problems and the trauma that she had endured while living in Mother's home. She was diagnosed with major depressive disorder and ADHD and was prescribed four different psychiatric medications. At the beginning of the case, C.B. was both afraid of Mother for her past mistreatment and angry at her about her continual substance abuse relapses. She felt that Mother had chosen drugs over her children. C.B. exhibited serious behavioral outbursts and refused to visit Mother, so her visits with Mother were suspended for most of this case. Despite ongoing treatment, C.B. remained guarded and reluctant to disclose her history of trauma to anyone. Later in the case, C.B. started to defy the rules imposed by Sister.

{¶13} Shortly after the trial court placed A.B. in CSB's permanent custody, C.B.'s behavior further deteriorated. She repeatedly ran away from Sister's home, for periods ranging from several hours to several weeks. The third time that C.B. ran away, it required several jurisdictions of law enforcement to locate her six weeks later at Mother's home. During that six-week period, C.B. did not attend high school or her scheduled counseling sessions. After CSB located C.B., it placed her in a secure residential treatment facility, where she could not flee and was required to attend high school classes and receive ongoing mental health treatment for the rest of the case.

{¶14} CSB would later learn that each time C.B. ran away, she went to Mother's home, where Mother resided with the maternal grandmother. Mother and the grandmother allowed C.B. to stay in their home and never informed Sister or the authorities that C.B. was there. CSB expressed serious concern that Mother ignored the court-ordered case plan by having unsupervised contact with C.B. and allowing her to hide from authorities, despite knowing that CSB was searching for her.

{¶15} On August 16, 2024, CSB moved for permanent custody of C.B. Because C.B. had continued to flee to Mother's home and recently expressed a desire to be reunited with her, the trial court appointed independent counsel to represent C.B. at the hearing. Following the final hearing, the trial court terminated parental rights and placed C.B. in CSB's permanent custody. Mother appeals and raises two assignments of error that this Court will address together to facilitate review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE [CSB] FAILED TO ESTABLISH ON THE RECORD SUFFICIENT EVIDENCE TO TERMINATE [MOTHER'S] PARENTAL RIGHTS.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT'S TERMINATION OF [MOTHER'S] PARENTAL RIGHTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶16} Through her two assignments of error, Mother argues that the trial court's judgment was not supported by sufficient evidence and was against the manifest weight of the evidence. Although sufficiency and weight are distinct legal concepts, this Court will review them together because they require a review of the same evidence. *See In re Z.C.*, 2023-Ohio-4703, ¶ 13.

{¶17} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on

an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996).

{¶18} This Court's review under the sufficiency of the evidence standard requires us to "'examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof.'" *In re Z.C.*, 2023-Ohio-4703, at ¶ 12, quoting *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). Clear and convincing evidence is that which will "'produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross*, at paragraph three of the syllabus.

{¶19} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶20} On the first prong of the permanent custody test, the trial court found that C.B. could not be returned to Mother's custody within a reasonable time or should not be returned to her custody based on the grounds set forth in R.C. 2151.414(E)(11). *See* R.C. 2151.414(B)(1)(a). CSB presented certified records from the juvenile case involving C.B.'s sibling, A.B. Those records were not disputed or challenged in any way. Based on A.B.'s records and other evidence presented at the hearing, the trial court found that Mother had her parental rights involuntarily terminated as to a sibling of C.B. and failed to prove that, "notwithstanding the prior termination,

[she] can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child[ren]." R.C. 2151.414(E)(11).

{¶21} Although Mother does not directly challenge the trial court's finding under R.C. 2151.414(E)(11), this Court emphasizes that it was supported by the evidence. CSB met its burden of proving that Mother had her parental rights to a sibling of C.B. terminated. The agency presented certified records from the juvenile case of A.B., which clearly demonstrate that the trial court involuntarily terminated the parental rights of Mother and Father to a sibling of C.B. and that this Court affirmed the trial court's judgment on appeal.

{¶22} Given that CSB met its burden to prove the prior involuntary termination of Mother's parental rights to A.B., the statutory burden then shifted to Mother to prove that she was able to provide "a legally secure permanent placement and adequate care for the health, welfare, and safety of the child." R.C. 2151.414(E)(11); *In re Z.S.*, 2021-Ohio-2022, ¶ 26 (9th Dist.). The trial court correctly concluded that Mother did not meet that burden.

{¶23} Mother presented evidence at the final hearing, but she did not present clear and convincing evidence to rebut the presumption of her parental unfitness under R.C. 2151.414(E)(11). By Mother's own admission, she began abusing methamphetamine as a teenager and that, even after achieving some periods of sobriety during the past eight years, she had relapsed numerous times. At the hearing, she testified that losing her children is a major source of stress for her. Nevertheless, Mother claimed that she had been sober since late January 2025, more than two months before the final hearing, because she finally realized that she needed to get her life together. Mother had not completed a drug treatment program, however, and never provided CSB with a single negative drug screen. Despite telling the caseworker that she wanted to be tested to prove that she was sober, Mother did not show up for any of her scheduled drug screens.

{¶24} Mother also asserts that she has stable housing because she has lived in the same home for several years. In her appellate brief, she faults CSB for failing to evaluate her home, but Mother does not dispute evidence that the caseworker scheduled several appointments to evaluate her home, but she was not home or did not answer the door each time the caseworker arrived for their scheduled appointment. The caseworker had tried unsuccessfully for nearly two years to evaluate the suitability of Mother's home, but she had never been allowed to enter. Mother was also unemployed and failed to demonstrate that she could meet the financial needs of her child. She also admitted that she knew nothing about C.B.'s mental health diagnoses or her ongoing counseling and psychiatric treatment.

{¶25} Further evidence of Mother's inability to provide C.B. with a suitable home is the fact that she repeatedly concealed C.B. in her home when she ran away from Sister's home. Mother knew that she was violating the court-ordered case plan by having unsupervised contact with C.B. She exercised poor judgment by failing to contact Sister, CSB, or the police, and she facilitated C.B.'s poor choices by allowing her to hide in her home and miss an extended period of high school and counseling.

{¶26} Next, the trial court found that permanent custody was in the child's best interest. When reviewing the trial court's best interest determination, this Court focuses primarily on the specific factors set forth in R.C. 2151.414(D). *In re M.S.*, 2023-Ohio-1558, ¶ 25 (9th Dist.). The trial court was required to consider the statutory best interest factors, which include: the interaction and interrelationships of the child, her wishes, her custodial history, her need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see also In re R.G.*, 2009-Ohio-6284, ¶ 11 (9th Dist.). Because the trial court found that the factor set forth in R.C.

2151.414(E)(11) applied in this case, it was required to again consider that factor in its best interest analysis.

{¶27} Mother had limited interaction with C.B. during this case, primarily because of C.B.'s negative feelings toward Mother and refusal to visit her. Mother's visits were suspended for most of this case until CSB and the C.B.'s counselor determined that supervised contact would be appropriate. By the time of the hearing, the only authorized interaction that Mother had with C.B. consisted of two supervised phone calls.

{¶28} Nevertheless, during August 2024, as explained already, Mother had unauthorized, unsupervised contact with C.B. when the child ran away from Sister's home. During these periods, Mother exercised poor parenting judgment by hiding the child from CSB and allowing her to skip high school and counseling for an extended period. It is unknown whether Mother exercised any supervision of C.B. during those periods and/or whether C.B. was exposed to drug use or other environmental factors that threatened her safety and well-being.

{¶29} By the time of the hearing, C.B. wanted to return to Mother. Again, no definitive explanation was provided for C.B.'s change in feelings toward Mother. The guardian ad litem testified, however, that Mother was not prepared to provide C.B. with a suitable home environment, as explained by the evidence detailed already. She testified that permanent custody was in the best interest of C.B.

{¶30} By the time of the final hearing, C.B.'s custodial history had included four separate removals from Mother's custody over the previous seven years because of Mother's unresolved substance abuse and other instability in her life. During nearly five and a half years living outside Mother's custody, C.B. had moved between several different temporary placements. The evidence was not disputed that C.B. had suffered from ongoing instability and uncertainty and needed a

stable and secure permanent home. CSB had been unable to locate any suitable relatives who were willing to provide C.B. with a permanent home and Mother failed to demonstrate that she was able to do so.

{¶31} Finally, the trial court was required to again consider that Mother previously had her parental rights involuntarily terminated as to a younger sibling of C.B. and that, despite that prior termination, Mother failed to demonstrate that she was able to provide C.B. with a safe and secure home. *See* R.C. 2151.414(D)(1)(e); R.C. 2151.414(E)(11). As previously explained in detail, this finding was supported by substantial evidence. Although Mother testified that she had resolved her parenting problems, her testimony was disputed by other evidence and did not amount to clear and convincing evidence that she was able to provide C.B. with a suitable home. The evidence was clear that Mother had failed to resolve the same parenting problems that have plagued her for many years and that she remains unable to provide C.B. with a safe and stable home.

{¶32} Given all the evidence before the trial court, this Court must conclude that the trial court had sufficient evidence to support its judgment and did not lose its way in terminating Mother's parental rights and placing C.B. in the permanent custody of CSB. *See Eastley*, 2012-Ohio-2179, at ¶ 20. Mother's first assignment of error is overruled.

III.

{¶33} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

SCOT STEVENSON
FOR THE COURT

FLAGG LANZINGER, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

KIMBERLY STOUT-SHERRER, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and AARON B. CAMPBELL, Assistant Prosecuting Attorney, for Appellee.

MICHELLE TOMER, Guardian ad Litem.